UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK **CV 12 - 2669**

FAMIDA MOHAMMAD,

Plaintiff,

-v-

THE CITY OF NEW YORK; New York City Police
Department ("NYPD") Officers JOHN DOES 1
through 4; (The names being fictitious, as the true
names and shield numbers are not presently known), In
their individual capacities;

Defendants.

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Index No.

**VITALIANO, J.**

This action arises out of the excessive force used by New York City Police Department

("NYPD") officers against plaintiff FAMIDA MOHAMMAD ("Ms. MOHAMMAD"), resulting

from her proximity to her son's concurrent assault by the same NYPD officers. Ms.

MOHAMMAD, by her attorneys DAVID B. RANKIN and JANE L. MOISAN of the Law

Office of Rankin and Taylor, as and for her complaint, does hereby state and allege:

### PRELIMINARY STATEMENT

1.  This is a civil rights action brought to vindicate Ms. MOHAMMAD's rights under the Fourth

    and Fourteenth Amendments of the Constitution of the United States, through the Civil

    Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983; under the Civil Rights Act of

    1870, as amended, codified as 42 U.S.C. § 1981; and pendant claims under the Constitution

    of the State of New York, Article I, §§ 6, 11, and 12, and the laws of the State of New York.

2.  Ms. MOHAMMAD's rights were violated when officers of the New York City Police

    Department ("NYPD") unconstitutionally and without any legal basis seized, detained, and

    used unlawful force against her.

3.  Upon information and belief, defendants' use of excessive force arose from a perception of Ms. MOHAMMAD's religion and nationality, rather than any indication of criminal conduct on her part. But for the individual defendants' perception of Ms. MOHAMMAD's family religion and ethnicity, as evidenced by the ethnic and religious insults and abusive language used by the individual defendants throughout the incident complained of, such injurious and unlawful behavior would not have ensued. By reason of defendants' actions, including their use of unreasonable and excessive force against the Ms. Mohammad, she was deprived of her constitutional rights.

4.  Ms. MOHAMMAD seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (3-4).

6.  This action is brought pursuant to 42 U.S.C. §§ 1981, 1983 and 1988 for violations of the Fourth and Fourteenth Amendments of the Constitution of the United States.

7.  Pursuant to New York State General Obligations Law § 50-E, Ms. MOHAMMAD filed a timely Notice of Claim with the New York City Comptroller on or about December 16, 2011. Thus, this Court has supplemental jurisdiction over Ms. MOHAMMAD's claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).  Ms. MOHAMMAD's claim was not adjusted by the New York City Comptroller's Office within the period of time provided by statute.

2

8. Venue is proper pursuant to 28 U.S.C. §1391(b) in that Ms. MOHAMMAD's claims arose in the Eastern District of New York.

9. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

10. Ms. MOHAMMAD is a Pakistani, Muslim female and, at all times relevant to this action, was a resident of Kings County, New York.

11. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

12. Defendants NYPD Officers JOHN DOES 1 through 4 ("individual defendants") were at all times relevant herein officers, employees and agents of the NYPD. At all times relevant to this action, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

13. The individual defendants are being sued in their individual capacities.

3

14. The true names and shield numbers of the individual defendants are not currently known to the Ms. MOHAMMAD. However, all of said defendants are employees or agents of the NYPD. Accordingly, said defendants are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Obligations Law § 50-k. The Law Department, then, is hereby put on notice that (a) Ms. MOHAMMAD intends to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants becomes known to Ms. MOHAMMAD; and (b) the Law Department should immediately begin preparing their defense in this action.

15. Defendants' acts herein complained of were carried out intentionally, recklessly, with malice and gross disregard for Ms. MOHAMMAD's rights.

## STATEMENT OF FACTS

16. The incident alleged herein occurred principally on December 5, 2011 at approximately 2:30 a.m. and thereafter in the vicinity of 1362 Coney Island Avenue, Brooklyn, New York 11230.

17. At the time and location described in paragraph 16, *supra*, Ms. MOHAMMAD was at home when she heard her teenage son, "H.M.," cry out from his location in the apartment building's stairwell.

18. Upon hearing her son cry out, Ms. MOHAMMAD rushed to the stairwell. Upon information and belief, inside the apartment building's front door, the individual defendants attempted to force open the second inside door leading to the stairway and trapped H.M.'s foot in the door.

4

19. Ms. MOHAMMAD rushed to her son and informed the individual defendants on the other side of the door that, in sum and substance, her son's foot was trapped under the door and blocking it, and she requested they speak with her.

20. Ms. MOHAMMAD immediately began pulling her son's leg in order to free it from the door, fearful the officers' forcing of the door would cause his foot to break.

21. Upon information and belief, during this time, defendant DOE 1 reached through the partially-open door and unloaded pepper spray into the tight area, causing pepper spray to go into H.M.'s and Ms. MOHAMMAD's faces, noses, and mouths.

22. The individual defendants pushed the door open with such force it threw Ms. MOHAMMAD and her son backward.

23. The thrust caused Ms. MOHAMMAD to fall backward and smash the back of her head. As she lay on the floor, defendant DOE 1 entered the stairway area and continued pepper spraying Ms. MOHAMMAD and her son.

24. Ms. MOHAMMAD then witnessed defendant DOES 1 through 4 yank up her son, throw him against the wall and beat him in the face and body. During this beating, her son's blood hit her and she fainted.

25. When Ms. MOHAMMAD regained consciousness, she witnessed H.M. lying on the sidewalk, so bloody and beaten she did not immediately recognize him, and feared for his life.

26. During the time and location described in paragraphs 16 to 26, *supra*, defendants DOES 1 through 3 made ethnic and religious slurs against Ms. MOHAMMAD and her family, including swearing at her while demeaning her speech and accent, and naming her religion and saying, "HOW CAN YOU RAISE UP YOUR KIDS LIKE THAT?"

5

27. Ms. MOHAMMAD and her son were taken to the hospital in an ambulance. Ms. MOHAMMAD received treatment for pepper spray.

28. As a result of this incident, Ms. MOHAMMAD suffered physical, psychological and emotional injuries, including the inability to seek assistance from law enforcement, and injury to the back of her head, and to her neck, back, arm and hands, resulting in pain and numbness for which she continues to seek medical care. These physical injuries cause constant pain and prevent Ms. MOHAMMAD from working and performing daily tasks including cooking or writing.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**

29. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

30. Defendants, under color of state law, subjected Ms. MOHAMMAD to the foregoing acts and omissions, thereby depriving Ms. MOHAMMAD of her rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of her person, including the excessive use of force; (b) freedom from deprivation of liberty without due process of law; and (c) the enjoyment of equal protection, privileges and immunities under the laws.

31. Defendants' deprivation of Ms. MOHAMMAD's constitutional rights resulted in the injuries and damages set forth above.

**SECOND CLAIM**
**FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983**
**(Against the Individual Defendants Only)**

32. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the NYPD or other law enforcement agency employing unjustified and excessive force against a civilian or falsely arresting a civilian.

34. The individual defendants were present for the above-described incident and witnessed other defendants use excessive force against Ms. MOHAMMAD and her son.

35. The individual defendants' use of force against Ms. MOHAMMAD and her son was obviously excessive and unjustified under the circumstances yet the individual defendants failed to take any action or make any effort to intervene, halt or protect Ms. MOHAMMAD from being subjected to excessive force by other individual defendants.

36. The individual defendants' violations of Ms. MOHAMMAD's constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force resulted in the injuries and damages set forth above.

### THIRD CLAIM
### EQUAL RIGHTS UNDER THE LAW – 42 U.S.C. § 1981

37. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

38. The defendants, acting individually and in concert, solely because Ms. MOHAMMAD is Pakistani and Muslim, intentionally discriminated against her in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, by, without any cause or provocation whatsoever, using excessive and unreasonable force.

7

39. Because of the aforesaid acts committed by the defendants solely as a manifestation of discrimination against Ms. MOHAMMAD because she is a Pakistani Muslim woman, Ms. MOHAMMAD suffered loss of her liberty; received serious and likely permanent physical injuries necessitating medical treatment; suffered mental upset, anguish and disturbance; and lost both an extensive period of time and an extensive amount of income from her employment.

### FOURTH CLAIM
### *MONELL* CLAIM UNDER – 42 U.S.C. § 1983
### (Against Defendant CITY Only)

40. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

41. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

42. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual defendants' wrongful acts and acts that were infected with discrimination; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

43. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

8

44. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD
include, but are not limited to, the following unconstitutional practices:

    a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    b. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

    c. Retaliating against officers who report police misconduct; and

    d. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

45. The existence of aforesaid unconstitutional customs and policies may be inferred from
repeated occurrences of similar wrongful conduct, as documented in the following civil
rights actions filed against the CITY and analogous prosecutions of police officers:

    a. Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (police officers beat and use Mace upon a compliant arrestee while he was already in handcuffs);

    b. Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (police officers beat and use pepper spray upon arrestees even though they were both already handcuffed and compliant);

    c. Zabala v. City of New York, 3771/2010 (Sup. Ct., Kings Co.) (police officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered);

    d. Long v. City of New York, 09-CV-6099 (AKH) (S.D.N.Y.); People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.) (officer was prosecuted for recklessly using physical force);

    e. Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

    f. McMillan v. City of New York, 04-CV-3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

    g. Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

h.  <u>Dotson v. City of New York</u>, 03-CV-2136 (RMB) (S.D.N.Y.) (officers arrest and use excessive force against a candidate for City Council for trespassing in his own residential building);

i.  <u>Nonnemann v. City of New York</u>, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

j.  <u>Barry v. New York City Police Department</u>, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

k.  <u>Richardson v. City of New York</u>, 02-CV-3651 (JG) (CLP) (E.D.N.Y.) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

l.  <u>Taylor v. City of New York</u>, 01-CV-5750 (ILG) (MDG) (E.D.N.Y.) (same as <u>Richardson</u>, except without the excessive force; judge at the criminal trial acquitting Mr. Taylor noted, on the record, that he had "significant doubt" about the truthfulness of the officers who testified);

m.  <u>Walton v. Safir</u>, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

n.  <u>White-Ruiz v. City of New York</u>, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

o.  <u>Ariza v. City of New York</u>, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department);

p.  <u>Sorlucco v. New York City Police Department</u>, 89-CV-7225 (CCH), 888 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting that a fellow officer had raped her); and

q. <u>Kaufman v. City of New York</u>, 87-CV-4492 (RO), 1992 U.S. Dist. LEXIS 14049 (S.D.N.Y.) (bystander arrested for observing an unlawful arrest in public, requesting the officer's badge number, and telling the officer that he planned to file a report about the arrest).

46. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct**, are further evidenced, <u>inter alia</u>, by the following:

a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[1]

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in <u>Colon v. City of New York</u>, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying

---

[1]     Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

under oath and false swearing, Commissioner Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[2]

d. Regarding defendant CITY's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a city agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[3] When it does, however, Police Commissioner Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[4] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[5]

47. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct**, are further evidenced, <u>inter alia</u>, by the following:

---

[2]    Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[3]    In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted <u>de facto</u> policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

[4]    Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[5]    Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

a.  Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

b.  In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

c.  Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

48.  The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the defendant CITY, including, without limitation, Commissioner Kelly.

49.  The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the defendant CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates.  They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in

order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

50. All of the foregoing acts by defendants deprived the Ms. MOHAMMAD of federally protected rights enumerated above.

51. Defendant CITY knew or should have known that the acts alleged herein would deprive the Ms. MOHAMMAD of her rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

52. Defendant CITY is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City of New York and NYPD, and to require compliance with the Constitution and laws of the United States.

53. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the defendant CITY have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

54. The aforementioned policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police

14

misconduct detailed herein. Specifically, pursuant to the aforementioned policies, practices

and/or customs, the individual defendants felt empowered to exercise unreasonable and

wholly unprovoked force against Ms. MOHAMMAD. Pursuant to the aforementioned

policies, practices and/or customs, defendants failed to intervene in or report other

defendants' violation of Ms. MOHAMMAD's rights.

55. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's

wrongful de facto policies and/or well-settled and widespread customs and practices and of

the knowing and repeated failure of the defendant CITY and the NYPD to properly

supervise, train and discipline their police officers.

56. The actions of the individual defendants of employing wholly unprovoked and excessive

force resulted from and were implemented pursuant to the foregoing de facto policies and/or

well-settled and widespread customs and practices of the defendant CITY and were directly

responsible for the violation of the Ms. MOHAMMAD's constitutional rights.

**FIFTH CLAIM**
**RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK**
**FOR VIOLATIONS OF THE LAWS OF THE STATE OF NEW YORK**

57. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

58. The conduct of the individual defendants alleged herein occurred while they were on duty

and in uniform, and/or in and during the course and scope of their duties and functions as

NYPD officers, and/or while they were acting as an agent and employee of defendant CITY,

clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is

liable to Ms. MOHAMMAD pursuant to the state common law doctrine of respondeat

superior.

59. As a result of the foregoing, Ms. MOHAMMAD was deprived of her liberty, suffered

specific and serious bodily injury, pain and suffering, psychological and emotional injury,

costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM
## VIOLATIONS OF THE CONSTITUTION OF THE STATE OF NEW YORK

60. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if

fully set forth herein.

61. Defendants' conduct alleged herein breached the protections guaranteed to Ms.

MOHAMMADs by the New York State Constitution, Article I, §§ 6, 11, and 12, including

the following rights: (a) freedom from deprivation of liberty without due process of law; (b)

freedom from false imprisonment, meaning wrongful detention without good faith,

reasonable suspicion or legal justification, and of which Ms. MOHAMMAD was aware and

did not consent; (c); and the enjoyment of equal protection, privileges and immunities under

the laws.

62. Defendants' deprivation of Ms. MOHAMMADs' rights under the New York State

Constitution resulted in the injuries and damages set forth above.

## SEVENTH CLAIM
## ASSAULT AND BATTERY
## UNDER THE LAWS OF THE STATE OF NEW YORK

63. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

64. By the actions described above, the individual defendants did inflict assault and battery upon

Ms. MOHAMMAD. The acts and conduct of defendants were the direct and proximate cause

of injury and damage to Ms. MOHAMMAD and violated her statutory and common law

rights as guaranteed by the laws and Constitution of the State of New York.

16

65. As a result of the foregoing, Ms. MOHAMMAD was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## UNDER THE LAWS OF THE STATE OF NEW YORK

66. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67. By the actions described above, the individual defendants engaged in extreme and outrageous conduct, causing Ms. MOHAMMAD to fear for her son's life and suffer anxiety in the presence or potential presence of the police, and intentionally and/or negligently causing severe emotional distress to Ms. MOHAMMAD. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to Ms. MOHAMMAD and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

68. As a result of the foregoing, Ms. MOHAMMAD was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM
## VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW
## UNDER THE LAWS OF THE STATE OF NEW YORK

69. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. By the actions described above, the individual defendants violated Ms. MOHAMMAD's right to equal protection of law. The individual defendants, acting individually and in

concert, solely because Ms. MOHAMMAD is Pakistani and Muslim, intentionally discriminated against her in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, by, without any cause or provocation whatsoever, using excessive and unreasonable force.

71. Because of the aforesaid acts committed by the individual defendants solely as a manifestation of discrimination against Ms. MOHAMMAD because she is a Pakistani Muslim woman, Ms. MOHAMMAD suffered loss of her liberty; received serious and likely permanent physical injuries necessitating medical treatment; suffered mental upset, anguish and disturbance; and lost both an extensive period of time and an extensive amount of income from her employment.

72. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Ms. MOHAMMAD and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

### TENTH CLAIM
### NEGLIGENCE
### UNDER THE LAWS OF THE STATE OF NEW YORK

73. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

74. The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to Ms. MOHAMMAD. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to Ms. MOHAMMAD and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

75. As a result of the foregoing, Ms. MOHAMMAD was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING
## UNDER THE LAWS OF THE STATE OF NEW YORK

76. Ms. MOHAMMAD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77. Defendant CITY negligently hired, screened, retained, supervised, and trained defendants. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to Ms. MOHAMMAD and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

78. As a result of the foregoing, Ms. MOHAMMAD was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## JURY DEMAND

79. Ms. MOHAMMAD demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, Ms. MOHAMMAD demands judgment against the defendants individually and jointly and prays for relief as follows:

a.  That she be compensated for violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.  That she be awarded punitive damages against the individual defendants; and

c.    That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d.    For such other further and different relief as to the Court may seem just and proper.


Dated:    New York, New York
          May 25, 2012

                                    Respectfully submitted,


                            By:    _____
                                   David B. Rankin
                                   Jane L. Moisan
                                   Law Office of Rankin & Taylor
                                   *Attorneys for the Plaintiff*
                                   350 Broadway, Suite 701
                                   New York, New York 10013
                                   t: 212-226-4507